**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Federal Deposit Insurance Corporation as Receiver for Security Savings Bank,<br><br>Plaintiff,<br><br>v.<br><br>Kelly Jones, Stephen Dervenis, and Thomas Procopio,<br><br>Defendants. | Case No.: 2:13-cv-168-JAD-GWF<br><br>**Order re: Defendants' Motion to Dismiss [Doc. 28]; and Defendants' Motion to Join a Necessary Party [Doc. 32]** |

The FDIC as the receiver for failed Security Savings Bank sues three of the Bank's former officers and directors to recoup more than $13.1 million in bad loans made in 2005 and 2006 and—the FDIC claims—in violation of the Bank's lending policies, defendants' fiduciary duties, and just good sense. Doc. 1. Defendants move to dismiss the FDIC's claims under the business judgment rule, as time-barred, and as generally implausible. Doc. 28. They also ask to join the borrower of one of these loans as a necessary party under Rule 19 but, suspecting that the court lacks jurisdiction over that borrower, they mostly move to dismiss the complaint for failure to join this indispensable party. Doc. 32. Having considered the parties' protracted briefing on both motions, I grant the motion to dismiss only to the extent it seeks to dispose of any fiduciary-breach claim founded upon a duty of loyalty because it appears that the FDIC has abandoned that theory, and I deny the motions in all other respects.

**Background**[1]

This action involves a financial institution's nationwide real estate speculation and presents the question of who should be held responsible for the significant monetary losses after it all fell apart. The FDIC is the receiver of Security Savings Bank, a Henderson, Nevada, financial institution. Doc. 1. The Bank, chartered in 2000, soon came to focus its business on loan

---

[1] This factual description is intended only for general background and not as any finding of fact.

participations, particularly commercial real estate ("CRE") and acquisition, development, and construction ("ADC") loans.  *See id.* at 7.  This suit involves seven of these loans, for which the FDIC alleges that proper underwriting standards were ignored by the Bank's three high-ranking officers Kelly Jones, Stephen Dervenis, and Thomas Procopio[2]—the loan underwriters responsible for ensuring compliance with these policies before any loan was recommended for Bank approval:

1. A $100,000 participation in a $66.4 million senior ADC loan in Winchester Properties, a California development, approved on or about October 11, 2005.  Doc. 1 at 17-18 ("Winchester Senior Loan").  The debtor defaulted on or about January 2007.  *Id.* at 23.

2. A $3.4 million participation in a $4.8 million ADC mezzanine loan in Winchester Properties, on or about October 11, 2005.  *Id.* at 17-18 ("Winchester Mezzanine Loan").  The debtor defaulted on or about November 2007.  *Id.* at 23.

3. A $1.55 million participation in a $3 million mezzanine ADC loan in WSJ Key West, a Florida development, on or about November 30, 2005.  *Id.* at 24 ("Key West Mezzanine Loan").  The debtor defaulted on or about February 2008.  *Id.* at 28.

4. A $5 million participation in a $35,630,000 senior ADC loan for Winners, LLC, a Florida development, on or about February 10, 2006 ("Winners Senior Loan").  *Id.* at 29.  The debtor defaulted on or about December 2007.  *Id.* at 33.

5. A $3 million participation interest in a $19,040,000 ADC loan for Corinthian Communities, an Idaho development, on or about June 20, 2006 ("Corinthian Loan").  The FDIC does not state that this loan ever defaulted, although they allege that "damages in excess of $2.26 million" have been sustained.  *Id.* at 38.

6. A $5 million participation in a $26,210,000 ADC loan in Northshore Center THC, LLC, an Illinois development, on or about July 5, 2006 ("Northshore Loan").  *Id.* at 38.  The FDIC does not state that this loan ever defaulted, although they allege that "damages in excess of $3.4 million" have been sustained.  *Id.* at 43.

7. A $3,748,500 participation in a $4,165,000 ADC loan for Hisey, LLC, a

---

[2] Jones, a Texas resident, held several positions at the Bank: CEO from "on or about October 2004, until September 25, 2008," a director from October 2004 until January 2009, and "a member of the Bank's Investment and Loan Committee" from October 2004 to January 2009. Doc. 1 at 5.  Dervenis, a Virginia resident, was President, COO, and a director of the Bank from "on or about October 2004, until September 25, 2008," as well as a member of the Bank's Loan Committee from October 2004 to June 2008.  *Id.* Finally, Procopio, a Texas resident, was Senior Vice President of Compliance and Loan Operations/Loan Administration from "on or about October 2004, until December 2006" and a member of the Loan Committee from January 2005 to December 2006.  *Id.* at 5-6.  The parties do not specifically distinguish legal liability of any particular defendant in relation to the positions that defendant held.

Washington State development, on or about October 4, 2006 ("Hisey Loan"). *Id.* at 44. On or about November 2006, the Loan Committee approved the Bank's acquisition of the remaining loan balance, thereby increasing its share to $4,165,000. *Id.* The FDIC does not state that this loan ever defaulted, although it alleges that "damages in excess of $900,000" have been sustained. *Id.* at 48.

On January 31, 2013, the FDIC filed the instant action, alleging two counts against all defendants. In its first count, the FDIC alleges that defendants breached their "fiduciary duties," which "[a]s officers and directors of the Bank, at all times, [they] owed to the Bank." Doc. 1 at 49-50. These duties include the "fiduciary duties of care and loyalty, including duties of honesty, full disclosure, and the obligation to exercise their powers in good faith and with a view to the interests of the bank." *Id.* The FDIC's second count alleges gross negligence against all defendants under Nevada Law and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, ("FIRREA"), 12 U.S.C. § 1821(k). *Id.* at 52.

## Discussion

### A.    The Motion to Dismiss [#28]

Federal Rule of Civil Procedure 8(a) governs the standard for pleadings in a federal cause of action, and requires that "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." A district court may dismiss a complaint brought under Rule 8(a) for failing to state a claim upon which relief can be granted. Fed. R. Civ. Proc. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court is also "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

1    To state a "plausible" claim for relief, a plaintiff must "plead[] factual content that allows the

2    court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

3    556 U.S. at 678-79.  A complaint may only be dismissed for violating the statute of limitations when

4    it is apparent from the face of the complaint that the period has run.  *See Von Saher v. Norton Simon*

5    *Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010), *rev'd on other grounds*, 754 F.3d

6    712 (9th Cir. 2014).

7    **1.    The Timeliness of the FDIC's Claims under § 1821(d)(14) of FIRREA**

8    The time for initiating this suit is governed by § 1821(d)(14) of FIRREA, which provides a

9    three-year "statute of limitations" for FDIC receivership claims "[n]otwithstanding any provision of

10   contract."[3]  *Id.*; *F.D.I.C. v. New Hampshire Ins. Co.*, 953, F.2d 478, 486 (9th Cir. 1991).  The parties

11   do not dispute that the FDIC became a receiver on February 27, 2009, and filed this action nearly

12   four years later on January 31, 2013.  *See* Doc. 1 at 5.  The FDIC contends that prior to the running

13   of the statute of limitations, on February 12, 2012, the parties executed a written agreement to toll

14   the limitations period to permit them to exchange documents and attempt to resolve the case without

15   resorting to a lawsuit.  Doc. 61 at 8-9.  This tolling agreement was extended four times[4] and

16   ultimately expired on February 4, 2013.  *See id.* at 22-30.  The FDIC thus contends that the tolling

17   period was extended to February 4, 2013, and its filing of this action on January 31, 2013, was

18

19       [3] That the FDIC's claims in this case are premised entirely on Nevada state law does not limit the
     applicability of §1821(d)(14). Federal courts regularly find similar statutes apply to both federal and state

20   causes of action when the plain language refers to "any" limitations period. *See National Credit Union
     Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246, 1267-73 (10th Cir. 2013) (interpreting

21   provision of 12 U.S.C. § 1787(b)(14)), *cert. granted, judgment vacated on other grounds*, 134 S.Ct. 2818
     (2014); *Federal Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 142-43 & n.2 (2d Cir. 2013)

22   (interpreting provision of 12 U.S.C. § 4617); *see also In re Countrywide Fin. Corp. Mortgage-Backed Sec.
     Litig.*, 966 F. Supp. 2d 1018, 1022 (C.D. Cal. 2013) (interpreting Texas statute of limitations).

23

24       [4] That the tolling agreements were not explicitly referenced in the FDIC's complaint does not
     preclude the court from considering them on this motion to dismiss.  The court may consider—and treat as
     part of the complaint— documents attached to a motion to dismiss when their authenticity is not disputed.

25   *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *Knievel v. ESPN*, 393 F.3d
     1068, 1076 (9th Cir. 2005);*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The tolling

26   agreements were referenced in defendants' reply, where it is argued that "[a]ny claim by the FDIC that the
     statutory deadline has been extended pursuant to a tolling agreement entered into between the parties is

27   without merit," based on the plain language of the extender statute. Doc. 44 at 10.  They were then attached
     to defendants' motion for leave to file a surreply.  As neither party contests the authenticity, validity, or terms

28   of the tolling agreements, the court considers them as part of the complaint.

1   timely; defendants claim that the tolling agreements could not legally operate to extend the filing

2   deadline because the statute is actually one of repose, not limitations.

3             ***a.       The FIRREA Statutory Period Is One of Limitation, Not Repose.***

4         Section 1821(d)(14) provides:

5           (A)    In general

6              Notwithstanding any provision of any contract, the applicable statute
           of limitations with regard to any action brought by the Corporation as

7              conservator or receiver shall be--
    . . . .

8                  (ii)        in the case of any tort claim . . . the longer of--
                     (I)    the 3-year period beginning on the date the

9                              claim accrues; or
                     (II)   the period applicable under State law.

10

11           (B)    Determination of the date on which a claim accrues
           For purposes of subparagraph (A), the date on which the statute
           of limitations begins to run on any claim described in such

12              subparagraph shall be the later of–

13                  (i)        the date of the appointment of the Corporation as
                        conservator or receiver; or

14                  (ii)      the date on which the cause of action accrues.

15   Defendants contend that the "notwithstanding" clause converts §1821(d)(14)(A) into a statute of

16   repose because it signals an awareness that parties may wish to "contract out" of the limitations

17   period and forecloses their ability to do so.  *See, e.g.*, Doc. 63.  Defendants rely on *National Credit*

18   *Union Admin. Bd. v. Credit Suisse Sec. (USA)*, a recent decision from the District of Kansas, in

19   which the court found that the "notwithstanding" provision in a similar "extender" statute at 12

20   U.S.C. § 1787(b)(14) applied broadly and foreclosed the possibility that the parties could extend the

21   limitations period by contractual agreement.  939 F. Supp. 2d 1113, 1125-27 (D. Kan. 2013).

22   Defendants contend that the Kansas court's decision was supported by the Tenth Circuit's decision

23   in *National Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246, 1267-73

24   (10th Cir. 2013), and demonstrates that the statute of limitations has run on all of the FDIC's claims:

25   the FDIC was appointed receiver on February 27, 2009, was required to bring suit by February 27,

26   2012, but failed to file suit until January 31, 2013. 28, 2012. Doc. 44 at 10.

27         The FDIC argues that the Kansas court's decision is an outlier; the general trend in judicial

28

1   interpretation of the FIRREA limitations period reflects both the correct interpretation of the

2   statutory language and the "common understanding" that statutes of limitations are personal

3   defenses, subject to waiver, estoppel, and equitable tolling. *See, e.g.*, Doc. 61 at 3-8. The FDIC

4   contends that estoppel applies here, as prior to expiration of the limitations period the FDIC

5   contacted defendants to work out a potential pre-suit settlement of the claims, defendants expressly

6   agreed to toll the limitations period during the document-exchange phase, and the FDIC filed suit

7   before the contractually tolled period expired. *See id.* at 8-10. The FDIC also asserts that

8   recognizing the ability to toll FIRREA's three-year period is also consistent with FIRREA's

9   objective of allowing the FDIC to resolve the affairs of failed banks without costly and time-

10  consuming litigation. *See id.* at 11-13. Finally, the FDIC argues that its own interpretation of the

11  limitations period is typically given deference. *See id.* at 13-14.

12         The difference between the operation of a statute of limitation and one of repose is

13  significant. "A statute of limitations requires a lawsuit to be filed within a specified period of time

14  after a legal right has been violated." *McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008)

15  (quotation omitted). The limitations period is subject to waiver, estoppel, and equitable tolling.

16  *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1009 (9th Cir. 2011).[5] "On the other hand,

17  statutes of repose are designed to bar actions after a specified period of time has run from the

18  occurrence of some event other than the injury which gave rise to the claim." *McDonald*, 548 F.3d

19  at 779 (quotation omitted). "Statutes of repose . . . generally may not be tolled, even in cases of

20  extraordinary circumstances beyond a plaintiff's control." *CTS Corp. v. Waldburger*, 134 S.Ct.

21  2175, 2183 (2014).

22         The express language of § 1821(d)(14) does not clearly direct its placement into either

23  category. The provision is entitled "Statute of limitations for actions brought by . . . receiver," and

24  _____

25         [5] Section 1821(d)(14)(B) expressly conditions the applicability of this statute, by stating that the
     cause of action does not "accrue." Typically a claim accrues "when the plaintiff has a complete and present

26  cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also* Black's Law Dictionary 23 (9th ed.
     2009) (defining "accrue" as "[t]o come into existence as an enforceable claim or right."). "The term accrue in

27  the context of a cause of action means to arrive to commence, whereas a tolling statute is defined as a law that
     interrupts the running of a statute of limitations in certain situations." *Shoshone Indian Tribe of Wind River*

28  *Reservation, Wyoming v. United States*, 51 Fed. Cl. 60, 67 n.8 (Ct. Cl. 2001).

1    states that the period for both contract and tort claims, the period does not "accrue."  *Id.*  Typically, a

2    claim accrues "when the plaintiff has a complete and present cause of action."  *Wallace v. Kato*, 549

3    U.S. 384, 388 (2007); *see also* Black's Law Dictionary 23 (9th ed. 2009) ("accrue" means "[t]o

4    come into existence as an enforceable claim or right.").  And it also clearly states that it is

5    prescribing what "the applicable statute *of limitations* with regard to any action brought by" the

6    FDIC "shall be. . . ."  12 U.S.C. § 1821(d)(14)(A) (emphasis added).  But the statute begins with the

7    phrase "notwithstanding any contract," evincing an intent to impose a specific period of time

8    regardless of the parties' outside agreements.  *Id.*

9         The Ninth Circuit has characterized § 1821(d)(14)(A) as a statute of limitations, not one of

10   repose.  *See Resolution Trust Corp. v. First American Bank*, 155 F.3d 1126, 1128 & n.1 (9th Cir.

11   1998).  And as the FDIC points out, most courts elect to construe the "extender" statute as a statute

12   of limitations, and by extension find that the doctrine of equitable estoppel may apply.  *See, e.g.*,

13   *FDIC v. Kime*, --- F. Supp. 2d ----, 2014 WL 1324337, at *4 (S.D. Ind. Mar. 28, 2014); *FDIC v.*

14   *Baldini*, 2014 WL 2581193, at *3-*4 (S.D.W.Va. May 6, 2014) (collecting cases).  Indeed, the court

15   in *FDIC v. Kime* squarely declined to extend the Tenth Circuit's conclusion that the extender statute

16   in § 1787(b)(14) is one of repose to FIRREA's § 1821(d)(14)(A).  I find the Ninth Circuit's

17   characterization, along with the general trend of construing § 1821(d)(14)(A) as a statute of

18   limitations, is persuasive.  And I conclude that, if presented directly with the question, the Ninth

19   Circuit would likely conclude that § 1821(d)(14)(A) is a statute of limitations—not repose—that

20   could be extended by agreement.

21
22            **b.    Defendants have not demonstrated that the FIRREA period could not be**
                     **waived or tolled.**

23        Even assuming FIRREA's three-year period is one of repose, defendants have not established

24   conclusively that the parties could not expressly waive or extend that repose period.  The Supreme

25   Court has noted that statutes of repose may not be tolled by mutual agreement where the statute in

26   question implicates national interests.  *Mid State Horticultural Co. v. Pennsylvania R. Co.*, 320 U.S.

27   356, 361-64 (1943) (interpreting Interstate Commerce Act).  But when private agreements do not

28

1   implicate "national" interests, waivers have been allowed.  *In re Lehman Brothers Sec. & ERISA*

2   *Litig.*, 2012 WL 6584524, at *2 (S.D.N.Y. Dec. 18, 2012) (citing *Mid State* and finding that statute

3   of repose in 15 U.S.C. § 11 could be modified by private tolling agreements where the statute in

4   question controlled only "parties' private interests or equities").

5          Even if FIRREA is a statute of repose, it does not implicate the sort of national policy

6   interests that prevent parties from contracting around the filing deadline.  When acting as a receiver,

7   the FDIC does not gain any causes of action; it merely succeeds to existing claims.  12 U.S.C. §

8   1821(d)(2)(A)(I) ("[t]he [FDIC] shall, as conservator or receiver, and by operation of law, succeed

9   to all rights, titles, powers, and privileges of the insured depository institution, and of any

10  stockholder, member, accountholder, depositor, officer, or direct of such institution with respect to

11  the institution and assets of the institution.").  As the Supreme Court recognized in *O'Melveny &*

12  *Myers v. FDIC*, FIRREA's statutory provisions "do not govern the primary conduct of the United

13  States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver,

14  with respect to primary conduct on the part of private actors that has already occurred."  512 U.S.

15  79, 85-86 (1994); *In re Imperial Corp. of America*, 92 F.3d 1503, 1509 (9th Cir. 1996); *In re*

16  *Countrywide*, 966 F. Supp. 2d at 1029 ("Although FIRREA empowers the FDIC to sue on any state

17  right it obtained from the failed institution, nowhere does FIRREA allow the FDIC to substantively

18  define the nature and scope of those rights.").  Thus, in an FDIC-initiated action under FIRREA,

19  "[t]here is not even at stake that most generic (and lightly invoked) of alleged federal interests, the

20  interest in uniformity."  *O'Melvney*, 512 U.S. at 88.  And courts have found that tolling agreements

21  between the FDIC and a private party may toll the repose period under § 1821(d)(14) when the

22  validity and interpretation of the tolling agreement are not disputed.  *See FDIC v. Allison*, 1994 WL

23  245208, at *5-*6 (N.D. Tex. Jan. 24, 1994).

24          Defendants do not challenge the validity of the provisions of the tolling agreements, which

25  were signed by all parties to be charged, reference the subject matter to be tolled, and set a specific

26  extension date for bringing suit.  Drawing all reasonable doubts and inferences in favor of the FDIC

27  as this court must for purposes of this motion to dismiss, it is plausible that the FDIC's January 31,

28

1    2013, filing was timely and is not barred by § 1821(d)(14)(A).[6]

2
          **2.    The FDIC's Claims on the First Four Loans Are Not Patently Barred Due to an
3                 Earlier Accrual Date.**

4         Defendants argue alternatively that the FDIC's claims arising out of the Winchester Senior

5    Loan, the Winchester Mezzanine Loan, the Key West Mezzanine Loan, and the Winners Senior

6    Loan, (collectively, the "First Four Loans") must be dismissed because the last of these loans was

7    approved on February 10, 2006, more than three years prior to the FDIC's appointment as a receiver

8    on February 25, 2009.  Doc. 28 at 18.  In their reply brief, defendants contend that the FDIC's cause

9    of action accrued at the time the loans were originated—a position which the FDIC's complaint

10   reflects, as it alleges that defendants "breached their duties" by causing the Bank to approve and

11   fund the loan participations in question.  Doc. 44 at 8.  Defendants also point to a "trend in the law"

12   which places the accrual date at the date on which the loan is made.  *Id.* at 9 (citations omitted).

13        In opposition, the FDIC contends that the statute of limitations on these claims runs from the

14   date of default, not the date the loans were approved, because it was only at that time that the FDIC

15   incurred damages and could bring suit.  Doc. 38 at 6, 20-21.  Since the earliest default occurred in

16   January 2007, the FDIC brought suit within the three-year statutory period.  *See id.*[7]  The FDIC also

17   argues that even if the limitations accrual period is ambiguous, determination of an accrual date is an

18   issue for the trier of fact.  *Id.* at 21.

19        Section 1821 has been interpreted to prevent the FDIC from reviving claims that expired

20   before the receivership is established.  *F.D.I.C. v. McSweeney*, 976 F.2d 532, 535 (9th Cir. 1992);

21   *see In re Countrywide*, 966 F. Supp. 2d at 1021 (finding, *inter alia*, that statute of repose in 15

22   U.S.C. § 77m barred FDIC's institution of suit, where statute provided three-year period from the

23

24        [6] Other circuits have limited *O'Melvney*'s holding to actions taken by the FDIC as receiver, as
25   distinguishable for actions the FDIC took after assuming receivership.  *See Ferguson v. F.D.I.C.*, 164 F.3d
     894, 898 (5th Cir. 1999).  However, even if the tolling agreements in question were executed after the FDIC
26   assumed receivership, the court has not found authority which would change the outcome.

27        [7] The defaults at issue here occurred in January 2007 (Winchester Senior Loan), November 2007
     (Winchester Mezzanine Loan), February 2008 (Key West Mezzanine Loan), and December 2007 (Winners
28   Senior Loan).  *See id.*

date "of the sale," and FDIC was appointed as a receiver more than three years after the sale).  If the FDIC is appointed receiver while the applicable statute of limitations is intact, however, the period begins anew upon the date of receivership and the FDIC has at least three years to bring a claim. *See McSweeney*, 976 F.2d at 536.  The Ninth Circuit has looked to state law to determine the accrual date for FDIC claims.  *See FDIC v. Jackson*, 133 F.3d 696, 696-97 (9th Cir. 1998) (following Arizona law); *cf. FDIC v. Wabick*, 335 F.3d 620, 626-28 (7th Cir. 2003) (noting that § 1821(d)(14) provides "explicit direction of where to find the appropriate law" and directs the court "to look to state law in choosing the applicable limitations period.").

### a.    *Gross negligence*

Nevada law provides a two-year statute of limitations for negligence actions.  *See* NEV. REV. STAT. ANN. § 11.190(4)(e).  This is expanded to three years under FIRREA.  12 U.S.C. § 1821(d)(14)(A)(ii).  "The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990).  "Mere ignorance of the existence of a cause of action or of the facts which constitute the cause will not postpone the operation of the statute of limitations; the statute runs from the time the cause of action or of the facts which constitute the cause of action first accrues notwithstanding such ignorance, if the facts may be ascertained by inquiry or diligence, or if the ignorance is not willful and does not result from negligence or lack of diligence."  *Sierra Pacific Power Co. v. Nye*, 389 P.2d 387, 390 (Nev. 1964).  A plaintiff alleging that the statute of limitations should be tolled has the burden of demonstrating the time and manner of discovery, as well as the circumstances excusing the same.  *Siragusa v. Brown*, 971 P.2d 801, 807 (Nev. 1998).

The FDIC argues that as to the First Four Loans, the defendants were "grossly negligent . . . when they withheld from or provided exaggerated information to the Loan Committee in recommending or approving the [Winchester Senior Loan and the Winchester Mezzanine Loan]." Doc. 1 at 21.  Both loans were approved on October 11, 2005.  *Id.* at 17-18.  Similarly, the FDIC alleges that Defendants "recommended, and . . . approved the [Key West Mezzanine Loan] through

1    their gross negligence." *Id.* at 24-25.  The Key West Mezzanine Loan was approved on November

2    30, 2005.  *Id.* at 28.  Finally, the FDIC alleged that Defendants "were grossly negligent . . . when

3    they withheld from or provided exaggerated information to the Loan Committee in recommending or

4    approving the [Winners Senior Loan]."  *Id.* at 31.  This loan was approved on or about February 10,

5    2006.  *Id.* at 29.[8]

6        A plaintiff can "plead himself out of a claim by including unnecessary details contrary to his

7    claim."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Ninth Circuit

8    has acknowledged a "trend" which establishes the accrual date at the time a loan originated, not at

9    the time of default.  *See Jackson*, 133 F.3d at 697 (citing cases applying Texas, Georgia, Illinois, and

10   federal common law).  However, *Jackson* applied Arizona law, and Defendants have not cited to

11   Nevada authority which extends this "trend" to Nevada accrual periods.  More importantly, there is

12   no clear indication of when the FDIC's predecessors-in-interest obtained knowledge of defendants'

13   gross negligence, as the FDIC alleges that Defendants concealed the fact the underwriting materials

14   they received from the "lead" bank were of questionable value.  The issue of how long defendants

15   concealed such information plainly raises a factual issue that cannot be resolved by mechanical

16   application of the statute of limitations.

17                                    ***b.    Breach of fiduciary duty***

18       In Nevada, "[a] fiduciary relationship exists when one has the right to expect trust and

19   confidence in the integrity and fidelity of another."  *Powers v. United Serv. Auto. Ass'n*, 962 P.2d

20   596, 602 (Nev. 1998).  "A breach of fiduciary duty is fraud."  *Nevada State Bank v. Jamison Family*

21   *P'ship*, 801 P.2d 1377, 1382 (Nev. 1990); *see In re Amerco Derivative Litig.*, 252 P.3d 681, 703

22   (Nev. 2011).  A plaintiff alleging a Nevada fraud claim must bring it within three years, with "[t]he

23   cause of action . . . deemed to accrue upon the discovery by the aggrieved party of the facts

24   constituting the fraud or mistake."  NEV. REV. STAT. ANN. § 11.190(3)(d).  However, 12 U.S.C. §

25   1821(d)(14)(C) provides that "[i]n the case of [a tort claim for fraud] . . . for which the statute of

26

27       [8] The court presumes for purposes of this order that these acts occurred too close to the date the Bank
28   approved the loans to make a material difference for purposes of the limitations period.

1    limitations applicable under State law with respect to such claim has expired not more than 5 years

2    before the appointment of the [FDIC] as conservator or receiver, the [FDIC] may bring an action as

3    conservator or receiver on such claim *without regard to the expiration of the statute of limitation*

4    *applicable under State law*." *Id.* (emphasis added).  Courts have uniformly held that this provision

5    expresses Congress's unambiguous intent to revive claims otherwise already stale under state law.

6    *See, e.g.*, *Enterprise Mortgage Acceptance Co., LLC, Securities Litigation v. Enterprise Mortgage*

7    *Acceptance Company, LLC*, 391 F.3d 401, 407 (2d Cir. 2004); *In re Royal Ahold N.V. Securities &*

8    *ERISA Litigation*, 351 F. Supp. 2d 334, 367 (D. Md. 2004); *L-3 Communications Corp. v.*

9    *Clevenger*, 2004 WL 1941248, at *5 (E.D. Pa. Aug. 31, 2004); *Milano v. Perot Systems Corp.*, 2004

10   WL 2360031, at *5 n.8 (N.D. Tex. Oct. 19, 2004).

11        The complaint alleges that the first of the seven Bank approvals—the Winchester Senior

12   Loan—occurred in October 2005.  Doc. 1 at 17-18.  Even assuming that Nevada state courts would

13   calculate accrual date on this cause of action from the date of loan origination and that claim would

14   have expired under three-year state law in October 2008, the FDIC was appointed receiver February

15   27, 2009, clearly within the 5-year "renewal" period provided under § 1821(d)(14)(C).  Thus, the

16   FDIC timely asserted all of its breach-of-fiduciary-duty claims for the First Four Loans.

17

18   **c.    *Defendants' Alternative Request to Strike Last Four Claims Under Rule 12(f)***

19        Defendants move alternatively to strike any reference to the First Four Loans.  Doc. 28 at 18.

20   They contend that the court has discretion to strike reference to redundant or prejudicial claims from

21   the complaint under Rule 12(f) and should because the FDIC does not have any claims as to these

22   loans.  *Id.* at 19.  As the court has rejected the argument that the statute of limitations has run as to

23   these claims, this motion to strike is denied as moot.

24

25

26

27

28

1

### 3. Sufficiency of the FDIC's Claims and Allegations

2

#### a. Gross Negligence

3       Defendants ask the court to dismiss the FDIC's gross negligence allegations because they are

4    not meritorious.  Defendants argue that the loans at issue involved a "lead" bank and other

5    "participatory" banks like theirs.  *See* Doc. 28 at 3-4.  As directors of a "participatory" bank,

6    defendants relied extensively on the "underwriting package" materials received from the "lead"

7    bank—which the FDIC concedes as true.  *Id.* at 4.  Thus, defendants contend that the "gross

8    negligence" characterization is inapplicable because they reasonably relied on documents from the

9    "lead" bank in performing their underwriting duties.  *Id.* at 4, 11.  Defendants also contend that they

10   performed "substantial analysis" of the underwriting documents received from the lead bank before

11   presenting their findings to the Bank's loan's committee.  *Id.* at 12. The FDIC responds that it has

12   pled a facially plausible claim for relief that makes "numerous specific allegations that Defendants

13   were grossly negligent."  Doc. 38 at 9.

14       "A director or officer of an insured institution may be held personally liable for money

15   damages in any civil action . . . for gross negligence."  12 U.S.C. § 1821(k).  To recover under a

16   negligence theory in Nevada, a plaintiff must demonstrate that the defendant (1) owed plaintiff a

17   duty of care, (2) breached that duty, and (3) harm resulted.  *Butler ex rel. Biller v. Bayer*, 168 P.3d

18   1055, 1065 (Nev. 2007).  "Gross negligence is manifested by the absence of even slight diligence or

19   want of even scant care, or a heedless and palpable violation of legal duty respecting the rights of

20   others."  *Batt v. State*, 901 P.2d 664, 667 n.5 (Nev. 1995) (citation omitted).  Trial courts have

21   denied motions to dismiss gross negligence claims against shareholders recommending loans that

22   they knew were not viable.  *FDIC v. Johnson*, 2012 WL 5818259, at *6 (D. Nev. Nov. 15, 2012).

23       That defendants may have relied on material provided by the "lead" lender for each of the

24   transactions or complied with internal bank procedures is not grounds for dismissal of claims or

25   allegations.  The complaint sets forth a plausible gross negligence allegations, and defendants'

26   factual claims do not justify dismissal of those allegations.

27

28

1

*b.      Breach of fiduciary duty of loyalty*

2      The FDIC's complaint alleges that defendants breached their "fiduciary duties," including

3  "duties of care and loyalty, including duties of honesty, full disclosure, and the obligation to exercise

4  their powers in good faith and with a view to the interests of the bank."  Doc. 1 at 49-50.  In

5  response to the defendants' motion to dismiss the FDIC's claims for breach of the duties of due care

6  and loyalty, *see* Doc. 28, the FDIC responds by essentially denying that it "alleges a breach of the

7  duty of *loyalty*."  Doc. 38 at 16 (emphasis in original).  Defendants argue that the FDIC's response

8  should be construed as a "judicial admission" that "there are no . . . allegations" of the duty of

9  loyalty; thus the complaint is now properly read as "alleg[ing] only gross negligence by the

10  Defendants with respect to breaching their duty of *care* owed to [the Bank]."  Doc. 44 at 5.

11      Whether construed as a judicial admission or simply an abandonment of any duty-of-loyalty

12  theory, the net result is the same: the FDIC's breach-of-fiduciary-duty claim is not based on a breach

13  of any duty of loyalty.  To the extent that the FDIC's complaint alleges a loyalty claim, it is

14  dismissed.

15

*c.      No dismissal warranted for duplicate claims*

16      Defendants also argue that counts 1 and 2 are now redundant because they allege identical

17  facts in support of what is ultimately the same theory: that defendants' gross negligence resulted in a

18  breach of their duties of care to the Bank.  Doc. 44 at 6.  For this reason, defendants contend that

19  "the duplicative claim for relief should be dismissed or stricken."  *Id.*[9]

20      A breach of fiduciary duty has different legal ramifications than gross negligence, as a

21  breach of fiduciary duty is a breed of fraud.  *Nevada State Bank v. Jamison Family P'ship,* 801 P.2d

22  1377, 1382 (Nev. 1990).  Although allegations may be found redundant as a matter of law,[10]

23

24

[9] Defendants do not specify which of the FDIC's two counts should now be dismissed.

25

26

[10] Defendants cite two cases in support of this position, but neither is on point.  *Nguyen v. Las Vegas Metropolitan Police Dep't*, 2012 WL 6101992 (D. Nev. Nov. 5, 2012) pertained to redundant claims in a 42 U.S.C. § 1983 action, where a suit was brought against municipal officials in their official capacities, as well as the municipal government.  *Id.* at *1.  Similarly, *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119 (N.D. Cal. 2010), considered an antitrust suit in which a redundant claim was struck which alleged no new facts or legal theories.  *Id.* at 1135.

27

28

1    defendants have pointed to no authority foreclosing the FDIC from alleging both a breach of the

2    fiduciary duty of due care and gross negligence on the same facts.  Counts 1 and 2 are not redundant

3    as a matter of law.

4                    **d.      Duty of due care**

5            Defendants also move to dismiss the FDIC's fiduciary-breach claims based on an application

6    of the business judgment rule—the presumption that the directors of a corporation act on an

7    informed basis, in good faith, and in the honest belief that the action taken is in the company's best

8    interest.  *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178-79 (Nev. 2006).  Defendants argue that

9    the FDIC's allegations do not rise to the level of intentional misconduct, fraud, or a knowing

10   violation of the law, but only assert negligence—liability from which the business judgment rule

11   protects.  Doc. 28 at 16.  They also reiterate their argument that they were entitled to rely on the

12   prospectuses and other information provided by the "lead" bank when making their own decisions.

13   *Id.*

14           The FDIC responds that the business judgment rule does not protect defendants against

15   grossly negligent breaches of the duty of care—which they have alleged.  Doc. 38 at 15-16.  To

16   satisfy their duty of care, defendants were obligated to act on an "informed basis," and they were not

17   free to completely disregard warning signs that the information relied upon may be faulty or to rely

18   blindly on information without verifying its integrity.  *See id.* at 17-18.  Regardless, whether

19   defendants' choices were informed or not is an issue for the trier of fact that cannot be resolved at

20   the motion-to-dismiss stage.  *See id.* at 17.  I agree.

21           "A director or officer of an insured institution may be held personally liable for money

22   damages in any civil action . . . for . . . conduct that demonstrates a greater disregard of a duty of

23   care (than gross negligence) including intentional tortious conduct, as such terms are defined and

24   determined under applicable State law."  12 U.S.C. § 1821(k).  Nevada recognizes that corporate

25   officers owe a duty of care.  *Shoen*, 137 P.3d at 1178.  "In essence, the duty of care consists of an

26   obligation to act on an informed basis."  *Id.*; *see also Horwitz v. Southwest Forest Industries, Inc.*,

27   604 F. Supp. 1130, 1134 (D. Nev. 1985).  Although Nevada has adopted the business judgment rule,

28

1   *see* NEV. REV. STAT. ANN. § 78.138, it applies "only in the context of a valid interested director

2   action, or the valid exercise of business judgment by disinterested directors in light of their fiduciary

3   duties." *Shoen*, 137 P.3d at 636.  The rule "does not protect the gross negligence of uninformed

4   directors and officers."  *Id.* at 640.  To rebut the presumption that the business judgment rule affords,

5   a plaintiff must allege "facts sufficient to raise (1) a reason to doubt that the action was taken

6   honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making

7   the decision." *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003).

8           The FDIC has pled sufficient facts to rebut the business-judgment-rule presumption.  It

9   alleges that defendants knowingly and deliberately withheld their reliance on questionable

10  prospectuses after they realized the damage that might cause.  On these allegations, it is certainly

11  plausible that if this material information had not been intentionally and wrongfully withheld by the

12  defendants, other bank officers or members of the Loan Committee would have been on notice that

13  the prospectuses and other information provided by the "lead" banks which they relied upon to enter

14  into the loan agreements was circumspect.  These factual allegations suffice to raise a reasonable

15  doubt as to whether defendants' input into the Bank's loan decisions, especially the later loan

16  decisions, were honest, and whether defendants knew that the information they relied upon was

17  inadequate.  Thus, the FDIC has plausibly pled a fiduciary breach based on gross negligence, and

18  defendants are not entitled to dismissal based on operation of the business judgment rule.[11]

19

20

21

22  _____

23  [11] Because neither party noted that a breach of fiduciary duty is akin to fraud, *Nevada State Bank v.
    Jamison Family P'ship,* 801 P.2d 1377, 1382 (Nev. 1990), they did not address the issue of whether the FDIC
24  pled this claim with the specificity required by FRCP 9(b).  Rule 9(b)'s "particularly" standard requires a
    plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false
25  or misleading about the purportedly fraudulent statement, and why it is false."  *Ebeid ex rel. United States v.
    Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).  "[W]hile a federal court will examine state law to determine
26  whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement
    that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule."  *Vess v.
27  Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (quotation omitted).  A review of the complaint reveals that the
    FDIC has properly pled the "who, what, when, where, and how" required by Rule 9(b), and its claims survive
28  scrutiny even under Rule 9(b)'s heightened particularity standard.  *Vess*, 317 F.3d at 1106.

1

2

**B.**      **Motion for Joinder or to Dismiss the Hisey Loan Claims**

3

      **1.**      **Motion to Join the Hisey Borrower or to Dismiss the Case for Failure Join an Indispensible Party**

4

     Defendants also move separately to either join the borrower of the Hisey Loan as an

5

indispensable party under Rule 12(b)(7) or dismiss the FDIC's claims because this borrower cannot

6

be joined.  Doc. 32.  Defendants contend that the Hisey Loan losses were incurred when the Hisey

7

borrower fraudulently misapplied a $722,664 disbursement of the loan, and complete relief cannot

8

be afforded without the borrower's participation in this litigation because there is no way to separate

9

out whether the harm was caused by Hisely borrower or the named defendants.  *Id.* at 3.  Defendants

10

contend that the FDIC knows the identity of this putative defendant but failed to include this party in

11

the complaint; prosecuting a separate action against the Hisey borrower will lead to duplication of

12

effort and a waste of judicial resources.  *Id.* at 3-4.  In their reply, defendants contend that the Hisey

13

borrower is not their joint tortfeasor, because the Hisey borrower's "fraudulent misuse of the loan

14

proceeds is an independent, superseding cause of any loss on the Hisey loan."  Doc. 45 at 3.  And

15

even if the Hisey borrower is in fact a joint tortfeasor, they contend it is still an indispensible party

16

because "[t]here is simply no way to differentiate the harm intentionally perpetrated by the Hisey

17

borrower from the overall losses that occurred on the Hisey Loan, as that fraudulent circumstance

18

accounts for the financial loss suffered."  *Id.*

19

     The FDIC argues that a joint tortfeasor like the Hisey borrower is not a truly necessary party

20

under Rule 19 because, "[i]f Defendants had not been grossly negligent in approving the loan in the

21

first place, the borrower would have had no opportunity to misapply the proceeds."  Doc. 40 at 6.

22

The FDIC also contends that joinder of this party is not required for defendants to plead any

23

affirmative defense.  *Id.* at 7.  Finally, the FDIC contends that, to the degree defendants allege that

24

the Hisey borrower contributed to the FDIC's damages, they are joint tortfeasors who are subject to

25

permissive joinder.  *Id.* at 9.

26

         *a.*      *Necessary and indispensible parties under Rule 19*

27

     Rule 12(b)(7) of the Federal Rules of Civil Procedure permits a party to defend by asserting

28

that a party has not been joined pursuant to Rule 19, which requires joinder of "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" if, "in that person's absence, the court cannot accord complete relief among the existing parties," or if disposal of the action in his absence "may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19. The Ninth Circuit has recognized that "[a] non-party is 'indispensible' to an action if (1) the non-party is 'necessary' under Rule 19(a); (2) the non-party cannot be joined; and (3) the non-party's absence would mandate dismissal according to a weighing of the factors outlined in Rule 19(b)." *Yellowstone County v. Pease*, 96 F.3d 1169, 1172 (9th Cir. 1996); *see E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). If the court finds that a party is not "necessary," there is no need to advance to the second and third steps of the analysis. *See Yellowstone*, 96 F.3d at 1172.

To be "necessary," one of two conditions must be satisfied: the court can conclude that "complete relief" is unavailable among the current parties to the suit or that the non-party has a "*legally protected interest* in the suit." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (emphasis in original); *Yellowstone*, 96 F.3d at 1172; *Pauite-Shoshone Indians of Bishop Community of Bishop Colony, California v. City of Los Angeles*, 637 F.3d 993, 997 (9th Cir. 2011).[12] The court's complete-relief assessment "is concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 Northern Calif. Counties Joint Apprenticeship and Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981); *see In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 904 (C.D. Cal. 2011).

In Nevada, "when a third party commits an intentional tort or crime, the act is a superseding cause, even when the negligent party created a situation affording the third party an opportunity to commit the tort or crime." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 724-25 (Nev. 2009).

---

[12] A court may look outside the pleadings to determine whether joinder is necessary. *See McShan v. Sherrill*, 283 F.3d 462, 464 (9th Cir. 1960); *In re Toyota Motor Corp. Unitended Accelerated Marketing, Sales Practices, and Products Liability Litigation*, 826 F. Supp. 2d 1180, 1196 (C.D. Cal. 2011).

1   Assuming that the Hisey borrower's intentional actions were the superseding cause of the FDIC's

2   loss as defendants contend,[13] this would not itself require joinder of the Hisey borrower to this suit.

3   Nevada courts have concluded that simply because a party's unforeseeable actions comprised a

4   superseding event did not mean that the case could not be adjudicated in their absence. *See Bower*,

5   215 P.3d at 724-25; *cf. Doud v. Las Vegas Hilton Corp.*, 864 P.2d 796, 802 (Nev. 1993), *superseded*

6   *by statute on other grounds*, NEV. REV. STAT. ANN. 651.015(3) (analyzing impact of superseding

7   cause on merits of dispute did not require addition the intervening tortfeasor to that suit).   Similarly,

8   federal courts have found that a plaintiff need not join a party "who may be responsible for a

9   superseding and intervening *negligent* act." *Patraka v. Armco Steel Co.*, 495 F. Supp. 1013, 1020

10  (M.D. Pa. 1980) (emphasis added).   It follows that "[t]he assertion of affirmative defenses which

11  may turn upon, and even require adjudication of, the actions or rights of non-parties does not require

12  joinder of those parties." *EquiMed v. Genstler*, 170 F.R.D. 175, 179 (D. Kan. 1996).

13              **b.       *The Hisey borrower is not a necessary and indispensible party*.**

14              Defendants cite several cases in support of their contention that the Hisey borrower is a

15  necessary party.   First, in *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir.

16  1999) the Eleventh Circuit found that an antitrust plaintiff must be dismissed because it failed to

17  name as a necessary party one of defendant's "co-conspirators," when the court was required to

18  review the "co-conspirator's" conduct in relation to the named defendant's own. *See id.* at 847-48.

19  Second, in *In re Apple iPhone 3G Products Liability Litigation*, 2011 WL 6019217 (N.D. Cal. Dec.

20  1, 2011), the trial court found that a smartphone manufacturer and the network provider were both

21  necessary parties in a suit which alleged that defects in the phone "merely exacerbated the poor

22

23              [13] Alternatively, the FDIC argues that if the Hisey borrower's actions were not a superseding cause of
24  the FDIC's loss, then defendants and the Hisey borrower are joint tortfeasors. Doc. 40, pp. 8-9.  "It has long
     been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."
25  *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (per curiam) (finding that in personal injury brought
     against medical device manufacturer, doctor who performed surgery implanting defective device was a joint
26  tortfeasor).   It is dubious whether the Hisey borrower is a "joint tortfeasor," as the Advisory Committee's
     Notes to Rule 19 recognize that the rule does not conflict with the "settled authorities holding that a tortfeasor
27  with the usual 'joint and several' liability is merely a permissive party to an action against another with like
     liability." *Id.*  In this case, the court need not reach the issue of whether the Hisey borrower is a "joint
28  tortfeasor" in order to determine that joinder is not necessary.

quality of service" existent in a cellular phone network infrastructure.  *Id.* at *1-*4.  Third, in *In re Toyota*, 785 F. Supp. 2d 883 (C.D. Cal. 2011), the trial court found that finding that foreign corporate entities responsible for the design, manufacture, distribution, and lease of defective vehicles were necessary parties in a suit brought against an American parent company manufacturer in a products liability suit involving millions of vehicles sold worldwide, as suit sought to hold American company liable for actions of unnamed subsidiary companies in other jurisdictions.  *Id.* at 906 (citing *Laker Airways*, 182 F.3d at 848).

These cases are inapposite because the Hisey borrower was not an "active participant" in the decisions that the FDIC claims constitute gross negligence and a breach of defendants' fiduciary duty.  Those decisions pertain to recommending the Hisey loan despite the risks involved and continuing to conceal the loan's failure from the Bank.  The Hisey borrower, by contrast, is alleged to have intentionally breached its independent contractual obligations with the Bank by diverting the construction loan proceeds for its own use.  The FDIC has not alleged that defendants colluded with the Hisey borrower to defraud the bank or otherwise circumvent assets.  Whether the Hisey borrower's absconding with construction funds was a foreseeable risk at the time the loan was issued is a question of fact for trial.  Complete relief can be afforded between the existing parties in the Hisey borrower's absence, demonstrating that this party is not necessary as contemplated by Rule 19.  Accordingly, I deny the motion to join the Hisey borrower and defendants' request to dismiss this action for failure to join this party.

## 2. Motion to Dismiss the Hisey Loan Claims

Defendants alternatively ask the court to dismiss all claims arising from the Hisey loan because they contend that Washington State is the proper venue for claims against the Hisey borrower.  They suggest that the FDIC should refile its claims in Washington and "will consent to jurisdiction and venue there so that the FDIC can pursue recovery on that claim against the proper party."  Doc. 32 at 4, 12.  The FDIC responds that Rule 12(b)(7) dismissal is not available for part of a claim and that the request should be denied. Doc. 40 at 12.  Because I find that the Hisey borrower is not a necessary party under Rule 19, I decline to dismiss those portions of the claims that pertain

1  to the Hisey loan.

2                                    **Conclusion**

3       Accordingly, it is hereby **ORDERED** that Defendants' Motion to Dismiss **[Doc. 28] is**

4  **GRANTED in part and DENIED in part**:

5       •      Any breach of fiduciary duty claim founded upon a duty of loyalty is dismissed;

6       •      It is denied in all other respects;

7       It is **FURTHER ORDERED** that Defendants' Motion to Join a Necessary Party **[Doc. 32] is**

8  **DENIED**.

9       DATED: September 19, 2014.

10

11                                    _____
                                     JENNIFER A. DORSEY
12                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28